IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DONNA CURLING,
DONNA PRICE,
and JEFFREY SCHOENBERG,

                Plaintiffs,

    v.

DOMINION VOTING SYSTEMS, INC.,

                Defendant.

## MOTION TO COMPEL DISCOVERY FROM NON-PARTY DOMINION VOTING SYSTEMS, INC. AND INCORPORATED BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 34, 37, and 45 and D.C. Colo. L. Civ. R. 7.1, Plaintiffs Donna Curling, Donna Price, and Jeffrey Schoenberg (the "Plaintiffs") hereby file this Motion to Compel Discovery from Non-Party Dominion Voting Systems, Inc. ("Dominion") pursuant to their June 9 subpoena issued pursuant to litigation before the United States District Court for the Northern District of Georgia, and request an expedited briefing schedule to resolve this Motion, showing as follows.

## LOCAL RULE 7.1 CONFERRAL STATEMENT

Plaintiffs complied with their obligation to fully meet and confer regarding Dominion's objections prior to filing this motion. *See* D.C. Colo. L. Civ. R. 7.1(a). Plaintiffs attempted to engage in the required "meaningful negotiations." *See Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003). In addition to several emails among counsel, the parties met and conferred by phone on June 24 and again on June 30. *See* **Ex. 1** at 6-7, 12-13.

1

During the June 24 conference, Dominion's counsel affirmed Dominion's position that it would not produce *anything* in response to the Requests.  Plaintiffs' counsel broached whether Dominion would consider supplementing its own prior production of communications, on the same terms it enjoyed in response to a subpoena less than a year ago in this same litigation, if the parties postponed a dispute over other requested documents and things included in the Requests.

During the June 30 conference, counsel for Dominion informed counsel for Plaintiffs that despite Plaintiffs' offer, Dominion was unwilling to produce anything in response to the Requests, including by supplementing communications it had previously produced, that Dominion would not consent to any of its agents or contract partners to produce anything in their possession that Dominion treated as confidential or proprietary, and that he was a "dry well" as far as the Requests were concerned.  *See* **Ex. 1** at 12-13.  On July 1, Plaintiffs' counsel again asked Dominion's counsel whether there was any way to strike a compromise regarding the Requests, or whether the parties would need to engage in motion practice in this Court, at significant cost to all involved.  *See* **Ex. 1** at 14.  Dominion's counsel did not respond.

## INTRODUCTION

Plaintiffs are individual voters pressing a lawsuit against an election system in Georgia that deprives each of them individually of the right to cast a verifiable vote, to ensure that vote counts as intended, and to be treated equally with similarly-situated absentee voters.  Despite Plaintiffs' best efforts and significant investment of time and expense, Dominion has refused to produce anything despite a properly-issued Rule 45 subpoena—or even to meaningfully confer with Plaintiffs about Dominion's objections.  Plaintiffs urgently need relief from this Court to

enforce their subpoena seeking materials essential to protect their individual rights to vote during a discovery window that closes in only about 30 days under an abbreviated discovery schedule.[1]

Plaintiffs request expedited briefing of this Motion and an order requiring Dominion to produce documents and things subject to Plaintiffs' Requests in the subpoena and to pay their reasonable expenses incurred in making this Motion.

## BACKGROUND

A.   **Brief History of the Georgia *Curling* Litigation.**

Plaintiffs in *Curling v. Raffensperger,* No. 1:17-cv-2989-AT (N.D. Ga.) ("*Curling*") filed suit in Georgia superior court over four years ago, which the defendants removed to the U.S. District Court for the Northern District of Georgia. Early litigation focused principally on the electronic touchscreen voting machines Georgia used at the time. Those machines, known as Direct Recording Electronic (DRE) machines, were predecessors to the current electronic touchscreen ballot-marking devices ("BMDs") and lacked a paper trail. Before the 2018 election, both groups of Plaintiffs moved for preliminary injunctions against the use of electronic voting machines. The district court found "serious security flaws and vulnerabilities in the State's" electronic voting system that burden Plaintiffs' constitutional right to vote without sufficient justification. *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1322-23 (N.D. Ga. 2018). But the court ultimately denied a preliminary injunction due to timing concerns, concluding that

---

[1] Plaintiffs are in no way affiliated with the various lawsuits filed after the 2020 election claiming widespread fraud that purportedly altered election outcomes, including those lawsuits filed by individuals who are now defendants in defamation actions filed by Dominion. As explained below, this lawsuit is not about election outcomes; it is simply about securing the constitutional right to vote for Plaintiffs in Georgia where Dominion's election equipment is used, regardless of any particular outcome in any given election. This lawsuit has been pending for several years, and it has included plaintiffs obtaining an injunction against the prior election system used in Georgia as unconstitutional in 2019. Georgia implemented Dominion's election equipment after that injunction issued.

relief on the eve of 2018 elections would "seriously test the organizational capacity" of election personnel.  *Id.* at 1326.

Plaintiffs[2] separately moved for preliminary injunctions before 2019 elections as well. After a July 2019 hearing, the district court again found the DRE machines constitutionally deficient.  *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1401-05 (N.D. Ga. 2019).  The court enjoined the use of DRE machines, found significant deficiencies and vulnerabilities in Georgia's voter registration database and electronic pollbook system, and directed Georgia state election officials to develop a plan to address them.  *Id.* at 1410-12.  Just after the July hearing, Georgia awarded a purchase and services contract to Dominion to replace DRE voting machines (and supporting election system components) with Dominion-manufactured equipment, including BMD voting machines, but did not comply with the court's directives regarding the voter registration database and pollbook system.  *Curling*, Dkt. 751 at 2-8, 23; *see also Curling v. Raffensperger,* 491 F. Supp. 3d 1289, 1305-06, 1319-20 (N.D. Ga. 2020).

Plaintiffs then filed new operative and supplemental complaints, respectively, and moved for preliminary injunctions.  After a September 2020 hearing, the court again found systemic problems threatening imminent, substantial, irreparable injuries, but largely denied preliminary relief upon balancing the equities, including the quickly-approaching 2020 general election.  *Id.* at 1326-28; *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1283-1307, 1312, 1335-40 (N.D. Ga. 2020).  Litigation continues under an accelerated discovery schedule due to end on August 16, 2021.  Order, *Curling,* Dkt. 1088 (May 3, 2021) (attached hereto as part of **Omnibus Exhibit 5**); Am. Scheduling Order, *Curling*, Dkt. 1093 (May 20, 2021) (attached hereto as part of

---

[2]     Plaintiffs in *Curling* split into two groups with separate legal representation in 2018. In the nomenclature commonly used in that case, movants are called the "Curling Plaintiffs," and their co-plaintiffs are called the "Coalition Plaintiffs."

**Omnibus Exhibit 5**).  Certain defendants urged the district court to certify the question of whether Plaintiffs have standing to challenge Georgia's current election system, which the district court has declined to do.  *Id.*

**B.     Operative Complaints in the Georgia *Curling* Litigation.**

The operative *Curling* complaints allege constitutional violations of each of the Plaintiffs' right to vote due to the inaccuracy, insecurity, and unreliability of various aspects of Georgia's voting system.  For one, Georgia uses electronic pollbooks – voter lists used at polling places that track who is allowed to vote in an election.  They have proven unreliable in election after election, serving both to deny and to abridge the right to vote.  *Curling v. Raffensperger,* 491 F. Supp. 3d at 1305-07, 1326-28.  For another, Georgia now mandates the use of electronic touchscreen BMDs connected to commercial off-the-shelf printers for in-person voting.  *Curling v. Raffensperger*, 493 F. Supp. 3d at 1275.  The current BMD system, which Georgia recently introduced, already has been plagued by numerous problems creating substantial barriers to voting.  *Id.* at 1283-1307.  Georgia's system offers voters no way of verifying that the machines captured their votes correctly, as it is supposed to record votes on a barcode that humans cannot read.  *Id.* at 1309.  The State's administration of its electronic voting system, including its poor cybersecurity practices, has left this troubled system open to further attack.  *Id.* at 1283-92.

Moreover, the State has taken shortcuts in accuracy testing, contributing to the impossibility of meaningfully auditing its BMD system.  *Id.* at 1292-1307.  Plaintiffs have already demonstrated an actual breach of Georgia's election infrastructure in 2016 and submitted testimony from election-security experts (including Defendants' experts) showing that Georgia's election system generally, and BMDs specifically, have serious vulnerabilities in the face of advanced persistent threats by sophisticated actors.  *Id.* at 1278-79, 1283-1307.  This further imperils the verifiability of individual ballots cast by individual voters and complicates, at best,

5

the security and verifiability of tabulation by optical scanners used to tabulate both hand-marked paper ballots cast by absentee and provisional voters and the BMD-marked paper ballots produced by in-person voters.  *Id.* at 1315-30.  As a consequence, voters like Plaintiffs who wish to vote in person are forced to cast their votes on machines that cannot ensure their votes will be recorded accurately.

C.      **June 9, 2021 Subpoena to Dominion.**

On June 8, 2021, Plaintiffs asked Georgia-based counsel for Dominion whether he would accept service of a Rule 45 subpoena *duces tecum* by electronic mail as a means of saving costs.  *See* Subpoena Correspondence (attached hereto as **Omnibus Exhibit 1**) at 2.  Counsel asked that Plaintiffs give him through the day's end to obtain permission, but did not respond that day.  **Ex. 1** at 1.  Accordingly, on June 10, 2021, Plaintiffs served the subpoena on Dominion's registered agent in Colorado (the "Requests," attached hereto as **Exhibit 2**).  On June 22, 2021, Dominion served its responses and objections ("Dominion R&Os," attached hereto as **Exhibit 3**).

Plaintiffs subsequently complied with their obligation to fully meet and confer regarding Dominion's objections prior to filing this motion.  *See* Local Rule 7.1 Statement, *supra* p. 2; D.C. Colo. L. Civ. R. 7.1(a).

Discovery is an iterative process that is characterized by an initial information asymmetry.  Had Dominion meaningfully engaged with Plaintiffs regarding the Requests, many of Dominion's objections likely could have been addressed in whole or in part.  Plaintiffs expressly raised these issues during the conferral process to no avail.  With more information from Dominion, Plaintiffs likely could have narrowed the scope and time period of many of the Requests even further.

6

Bereft of other options, Plaintiffs filed this Motion seeking the assistance of the Court. For the reasons below, production of the materials Plaintiffs requested from Dominion should be compelled.

## **ARGUMENT**

Federal Rule of Civil Procedure 45 permits discovery of non-parties by subpoena. The scope of discovery under "Rule 45 is the same as set forth in Rule 26(b)(1)." *Premier Election Sols., Inc. v. Systest Labs Inc.*, No. 09-CV-1822-WDM–KMT, 2009 WL 3075597, at *2 (D. Colo. Sept. 22, 2009) (citing Fed. R. Civ. P. 45 Adv. Comm. Note (1970)). Rule 26(b)(1) is broad, permitting parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 45 "contemplates that third parties may be subject to some inconvenience in responding to subpoenas." *SEC v. Fuhlendorf*, No. 10-cv-01691-MSK-KLM, 2010 WL 3547951, at *3 (D. Colo. Sept. 7, 2010).

**A.     Dominion Has Failed to Demonstrate that Plaintiffs' Requests Are Burdensome or Vague.**

Dominion asserts, without more, that 15 of Plaintiffs' 17 Requests are "burdensome." **Ex. 3**, Dominion R&Os at Response to Requests 1-14, 17. However, "[w]hen the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity." *Veroblue Farms USA, Inc. v. Wulf*, No. 1:21-MC-00016-CMA, 2021 WL 1979047, at *2 (D. Colo. May 18, 2021); *see also Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (explaining that objecting party's burden in resisting discovery cannot be sustained merely by asserting "boilerplate claims that the requested discovery is oppressive, burdensome or harassing").

Any "alleged burden must usually be established 'by affidavit or other reliable evidence.'" *Lambland, Inc. v. Heartland Biogas, LLC*, No. 18-cv-01060-RM-KLM, 2018 WL

7

7825202, at *2 (D. Colo. Nov. 29, 2018) (quoting *Hertz v. Luzenac Am., Inc.*, No. 04-cv-1961-LTB-CBS, 2006 WL 994431, at *12 (D. Colo. Apr. 13, 2006)). Courts require information such as "how many documents are responsive to the subpoena, how those documents are stored, how many of those documents are privileged or protected, or how much it would cost to" collect, review, and produce. *Veroblue*, 2021 WL 1979047, at *2. Dominion has offered nothing of the sort.

Likewise, "it is not enough for the objecting party to rely on boilerplate claims that the requested discovery is … vague." *Thompson v. Rios*, No. 07-CV-00025-PABK, 2008 WL 5101030, at *1 (D. Colo. Nov. 26, 2008) (internal quotation marks omitted). Dominion asserts that Requests 4, 6, and 11 are "vague" but offers only the thinnest explanation for *why* those Requests are supposedly vague. For example, Dominion insists that Request 6 is vague because Plaintiffs seek a copy of all software updates "made available in Georgia." Dominion knows what software updates are and should know the jurisdictions in which its software updates were deployed. In any event, any *bona fide* confusion on the part of Dominion could have been cleared up through the meet-and-confer process that Dominion rejected.[3]

Having offered only bare-bones objections regarding vagueness and burden, Dominion has waived its right to supplement those objections. *See Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-10 (E.D. Mich. 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection.").

---

[3] Likewise, Dominion's Objections to Definitions likely could have been addressed by the parties, had Dominion been willing to discuss them with Plaintiffs. Dominion objects that the definitions of "Election System" is vague and overbroad, and that the definitions of "You" and "Your" are overbroad and unduly burdensome. Plaintiffs were and remain willing to work with Dominion to refine these definitions to avoid uncertainty and to strike the appropriate balance between Plaintiffs' discovery needs and Dominion's discovery burden.

8

B.     **Plaintiffs' Requests are Proportional to the Needs of the Case.**

In response to all but one of the Requests, Dominion objects that Plaintiffs seek documents and materials that are not proportional to the needs of the case. *See* **Ex. 3**, Dominion R&Os *passim*. However, as with its burdensomeness objections, Dominion never carries its burden to explain *why* Plaintiffs' Requests lack proportionality, let alone the universe of documents that would prove so disproportionately burdensome to search, review, or produce.

An objection as to proportionality requires an examination of both the discovery sought *and* the needs of the case. Both sides of the ledger matter. Parties are entitled to discover information that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Hildebrand v. Wilmar Corp.*, No. 19-CV-00067-RM-NRN, 2020 WL 6262999, at *1 (D. Colo. May 22, 2020) (quoting Fed. R. Civ. P. 26(b)(1)). But Dominion, the party with the burden to establish the validity of its objections, never addresses the stakes and scope of Plaintiffs' case (both of which are significant).

Plaintiffs have for several years sought the vindication of their constitutional rights, which are irreparably, imminently, and repeatedly threatened by the design and implementation of Georgia's election system. The Georgia court has already held that a prior version of the election system injured Plaintiffs' respective rights to vote. *Curling v. Kemp*, 334 F. Supp. 3d 1303; *Curling v. Raffensperger*, 397 F. Supp. 3d 1334. That Court has likewise denied two motions to dismiss Plaintiffs' case for lack of standing. *See* Section E *infra*.

Plaintiffs are now engaged in expedited discovery seeking communications and documentation about the design and implementation of election equipment, software, and other

9

system components deployed in Georgia that is critical to its claims and to overcoming defenses posed by Defendants in the Georgia case. While Dominion is not a party to this litigation, its counsel and officials have until recently participated in document productions, written discovery, good-faith conferrals, depositions, and sealed and public Court conferences and hearings. There is simply no question that they are a proper discovery respondent, nor that they possess responsive and relevant material. Even so, Plaintiffs have only sought discovery from Dominion which Plaintiffs believe they need to prove their claims at trial—and even then, Plaintiffs have repeatedly offered to narrow and clarify the scope of their Requests to address Dominion objections, including as to proportionality.

Further, some of Dominion's proportionality objections could have been readily addressed though the meet and confer process that Dominion declined. For example, Dominion apparently perceived that Plaintiffs' Requests lacked appropriate date ranges. *See* **Ex. 3**, Dominion R&Os, Response to Request 2 (objecting that the Request is "not proportional to the needs of the case because it has no time limit"). Plaintiffs were ready and willing to provide date ranges, but Dominion showed no interest in that discussion.

**C.     Dominion's Confidential Information and Trade Secrets Will Be Protected.**

Dominion's objects to Requests 2, 4, 5, 6 and 7 on the basis that these Requests allegedly seek "documents that constitute trade secret information and/or information that is confidential or proprietary in nature." **Ex. 3**, Dominion R&Os.

Judge Totenberg years ago entered a robust Protective Order in *Curling* addressing these exact concerns raised by Dominion. Protective Order, *Curling*, Dkt. 477 (July 11, 2019) (attached hereto as part of **Omnibus Exhibit 4**). In fact, over Defendants' objections, Judge Totenberg previously required Defendants to produce certain equipment manufactured by Dominion subject to the Protective Order. Order, *Curling*, Dkt. 858 (Sept. 2, 2020); Order,

*Curling*, Dkt. 1081 (Mar. 26, 2021) (attached hereto as part of **Omnibus Exhibit 4**). And Dominion election equipment has been produced in other actions, too, with far fewer constraints. *See* Decision and Order, *Bailey v. Antrim Cnty.*, No. 2020009238CZ (Mich. Cir. Ct. Dec. 4, 2020) (attached hereto as part of **Omnibus Exhibit 7**). Dominion has made no showing, or even allegation, that the Protective Order has failed to secure Dominion's sensitive information. Nor could it, as Dominion has invoked the appropriateness of the Protective Order itself. Its counsel, for example, has asked the Court to seal on-record statements by a senior employee, submitting that it was "precisely the type of information that is deemed confidential under Section 2(d) of the Court's Protective Order (which also protects non-parties)." **Ex. 1** at 17.

When, like here, appropriate protections are in place, objections based on confidential information or trade secrets fail. *See, e.g., Cannoid, LLC v. Entourage Nutritional Distribs., LLC*, No. 16-CV-02848-RM-NYW, 2017 WL 11547023, at *4 (D. Colo. Aug. 22, 2017) (an objection that document requests seek disclosure of "trade secrets or other confidential information … is inadequate. The court has entered a Stipulated Protective Order in this case, which has a provision that applies to nonparties."); *Covelo Clothing, Inc. v. Atlandia Imports, Inc.*, No. CIV.A. 07-CV-02403-M, 2007 WL 4287731, at *2 (D. Colo. Dec. 5, 2007); (denying motion to quash subpoena because "[t]he Court has reviewed the protective order and finds that Covelo can produce its [trade secrets] under the "CONFIDENTIAL–OUTSIDE COUNSELS' EYES ONLY" provision of the Confidentiality Protective Order … and receive the protections it requests."); *Veroblue Farms USA, Inc. v. Leslie A. Wulf, et al.*, No. 1:21-MC-00016-CMA, 2021 WL 2805779, at *1–2 (D. Colo. July 6, 2021) (when a non-party is "protected from widespread disclosure of [sensitive] information by a protective order," "Rule 45 does not provide this Court with a basis" to quash the subpoena)*; see also* Fed. R. Civ. P. 45(c)(1)(G) (court may issue

protective order that "require[s] that a trade secret or other confidential [information] … be revealed only in a specified way.").

### D. Dominion is Not Correct that the Requested Information is Available from Other Sources.

Twelve times in its Objections, Dominion insists that the discovery Plaintiffs seek is "obtainable from other sources." *See* **Ex. 3** at 2-3, 8-17. Plaintiffs even assert this objection to five requests—Requests 8, 10, 12, 13, 14—to which they also object because the requested information is proprietary. Plaintiffs seek discovery that is uniquely in the possession of Dominion, and additional discovery that might be available from other sources has not been provided by those sources to date or is expressly being withheld. Without more, then, this Objection fails. *See Infinity Home Collection v. Coleman*, No. 17-MC-00200-MSK-MEH, 2018 WL 1733262, at *4 (D. Colo. Apr. 10, 2018) (rejecting objection that discovery sought from non-party was readily available from other sources because non-party provided "no evidence" that the requesting party actually had or would receive the discovery from elsewhere).

The Requests specifically seek documents and materials that are unique to Dominion or which are important to receive directly from Dominion. *See* **Ex. 2** at Request 2 (seeking "documentation of procedures" for using Dominion equipment and software drafted or revised by or sent to or from Dominion), Request 3 (seeking tools "used to extract and/or verify software and/or firmware" on Dominion equipment), Request 8 (seeking *inter alia* communications among Dominion personnel and to and from Dominion to non-parties "reflecting implementation, administration, maintenance, or support of or anticipated changes to the Election System"), Requests 9-17 (similar). There is no reason to believe a party to the *Curling* litigation would have equivalent or better access to these responsive materials.

Dominion also has provided no such evidence, as it must, that Plaintiffs actually has or will receive that discovery from a party or any other source. *Coleman*, 2018 WL 1733262, at *4. Indeed, Dominion has refused to consent to other parties or non-parties that have possession, custody, or control of Dominion's confidential or proprietary information producing that information in response to other discovery requests. *See, e.g.,* **Ex. 1** at 28. Moreover, one group of Defendants composed of the Georgia Secretary of State and members of the State Election Board – who likely do possess communications responsive to Requests 8-17 at a minimum – have thus far declined to produce any documents and are seeking a protective order from the Georgia district court to avoid doing so. *Curling,* Dkt. 1130. Plaintiffs, and their co-plaintiffs in the *Curling* suit, have engaged in extensive third-party discovery with county officials, and are conferring with county officials who are party defendants to produce additional documents as well. This has not resulted in a new production during this phase of discovery, nor is it guaranteed to do so, and nor would it necessarily yield the discoverable material in Dominion's possession.

The evidence available to Plaintiffs indicates that it will not actually receive or have available to it the requested discovery despite their best efforts under the Federal Rules of Civil Procedure. This is a situation to which third-party discovery is well-suited. Dominion's objection fails.

**E.    Many of Dominion's Objections Are Predicated on a Stay of Discovery That the Northern District of Georgia Declined to Issue.**

In response to *every* Request, Dominion "objects that the [N.D. Ga.] Court has not yet ruled on the critical threshold issue of whether Plaintiffs have standing to pursue the claims for which they seek this discovery…." *See* **Ex. 3**, Dominion R&Os *passim*. Even were it an accurate statement—which it is not—this Objection is tantamount to arguing that there should be

13

a stay of discovery in the Georgia action pending Judge Totenberg's resolution of certain issues including Defendants' challenges to Plaintiffs' standing.  This is an inappropriate objection, especially in this case.  **Ex. 4**, Protective Order, *Curling*, Dkt. 858.

"[A] court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved." *Clancy Sys. Int'l, Inc. v. Image Sensing Sys., Inc.*, No. 16-CV-01848-CMA-KMT, 2016 WL 9344079, at *2 (D. Colo. Oct. 6, 2016) (citing 8A Wright & Miller, Federal Practice and Procedure § 2040, at 198 (3d ed. 2010)).  In this case, however, Judge Totenberg has decided that no such stay is warranted.  Certain Defendants in the Georgia litigation have repeatedly sought stays to avoid their discovery obligations, citing new and questionably-applicable Eleventh Circuit case law to claim Plaintiffs still lack standing to pursue their claims and that their appeals of other orders granting limited relief (or, in one case, indicating she would grant relief at some future juncture). *See generally Curling*, Dkts. 1066, 1067, 1070, 1071, 1073, 1074, 1075 (concerning standing).  The Court has already twice denied motions to dismiss Plaintiffs' case for lack of standing. *Curling v. Raffensperger,* 403 F. Supp. 3d 1311 (N.D. Ga. 2019); *Curling*, Dkt. 751 (July 30, 2020).  Even as Judge Totenberg considers Defendants' standing arguments again, she has expressly ordered that the parties *accelerate* discovery, including non-party discovery. *See* **Ex. 5**.  Judge Totenberg has recognized that Plaintiffs are entitled to important discovery to prove up their claims and rebut Defendants' standing arguments—and obviously Dominion, as the entity responsible for manufacturing and supporting the election equipment used in Georgia elections, has highly-relevant information Plaintiffs need and are entitled to in discovery.

This Court should deny Dominion's attempt to impose a stay of discovery that has already been expressly denied.

**F.     The Discovery Disputes Pending in the Northern District of Georgia Do Not Relieve Dominion of Its Obligations**

In response to Requests 1, 3, 4, 5, 6, and 7, Dominion "objects that this Request seeks documents that are the subject of a pending discovery dispute between the parties." **Ex. 3**, Dominion R&Os.  Just as Defendants' pending challenges to Plaintiffs' standing do not augment Dominion's discovery obligations, Defendants' own discovery challenges are irrelevant here.

Defendants' challenges to discovery requests issued by Plaintiffs do not implicate Plaintiffs' Requests to Dominion.  *See* Joint Discovery Statement, *Curling,* Dkt. 1094 (attached hereto as **Exhibit 6**).  Rather, the pending discovery dispute in Georgia concerns Defendants' (spurious) objections based on:

1. *Burden* (**Ex. 6** at 4-5), a fact-intensive issue focused on the party asserting the burden.  Even if Judge Totenberg found that Plaintiffs' discovery requests to *Defendants* imposed an undue burden on *Defendants*, this would not help this Court decide whether Plaintiffs' requests *to Dominion* impose an undue burden *on Dominion*;

2. *Trade Secrets* (**Ex. 6** at 3), a concern that properly belongs to Dominion and is adequately addressed by the Protective Order;

3. *The Sufficiency of Plaintiffs' Allegations* (**Ex. 6** at 3), a non-sequitur of a response to discovery requests, especially when there is no pending motion to dismiss; and

4. *Complaints About Plaintiffs' Own Discovery Responses* (**Ex. 6** at 5), which, of course, is immaterial to this motion to compel.

The resolution of these challenges will not affect Dominion's obligations under Rules 26 and 45.

15

## CONCLUSION

Plaintiffs respectfully request that this Court:

(i)     issue an expedited briefing schedule such that Dominion files any response to this Motion and Plaintiffs file any reply no later than July 19, 2021;

(ii)     grant Plaintiffs' Motion to Compel and require production of documents under the June 9 subpoena no later than July 28, 2021; and

(iii)     award Plaintiffs reasonable fees and expenses incurred in making this Motion, including Plaintiffs' attorney's fees.[4]

Dated: July 14, 2021　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　 /s/ Lyndsey Cain
　　　　　　　　　　　　　　　　　　　　　　　Lyndsey Cain
　　　　　　　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　　　　　　　4200 Republic Plaza
　　　　　　　　　　　　　　　　　　　　　　　Denver, CO 80202
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (303) 592-1500
　　　　　　　　　　　　　　　　　　　　　　　LCain@mofo.com

　　　　　　　　　　　　　　　　　　　　　　　David D. Cross (*pro hac vice* forthcoming)
　　　　　　　　　　　　　　　　　　　　　　　Mary G. Kaiser (*pro hac vice* forthcoming)
　　　　　　　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　　　　　　　2100 L Street, NW
　　　　　　　　　　　　　　　　　　　　　　　Suite 900
　　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20037
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 887-1500
　　　　　　　　　　　　　　　　　　　　　　　DCross@mofo.com
　　　　　　　　　　　　　　　　　　　　　　　MKaiser@mofo.com

　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

---

[4] *See* Fed. R. Civ. P. 37(a)(5).

## CERTIFICATE OF SERVICE

I hereby certify that I have this 14th day of July, 2021, filed the within and foregoing ***Plaintiffs' Motion to Compel Discovery from Non-Party Dominion Voting Systems, Inc. and Incorporated Brief in Support*** by email to newcases@cod.uscourts.gov. I have also served a PDF version by email on the following:

J. Matthew Maguire, Jr.
PARKS CHESIN & WALBERT
75 14th Street, 26th Floor
Atlanta, Georgia 30309
Telephone: (404) 873-8000
mmaguire@pclawfirm.com

*Counsel for Dominion Voting Systems, Inc.*

/s/ *Lyndsey Cain*
Lyndsey Cain