IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Miscellaneous Case No. 21-mc-00164-RM

DONNA CURLING, DONNA PRICE, and JEFFREY SCHONBERG,

      Petitioners,

v.

DOMINION VOTING SYSTEMS, INC.,

      Respondent.

**DECLARATION OF NICOLE NOLLETTE IN SUPPORT OF
RESPONSE TO MOTION TO COMPEL DISCOVERY FROM
NON-PARTY DOMINION VOTING SYSTEMS, INC.**

I, Nicole Nollette, hereby declare under penalty of perjury, as follows:

    1.    I am over the age of 18 years. I have personal knowledge of the facts set forth below, and if called upon to do so, I could and would competently testify thereto.

    2.    I am the Executive Vice President of Operations at Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation (collectively, "Dominion") and have been in this role for 5 years and 3 months. Prior to Dominion, I held various operational and financial advisor positions for nearly 20 years. This experience includes my military service as an Officer in the United States Navy stationed overseas during Operation Enduring Freedom.

    3.    I have a Bachelors of Science Degree from the United States Naval Academy and a Masters in Business Administration from the Massachusetts Institute of Technology.

    4.    I have reviewed Petitioners Donna Curling, Donna Price, and Jeffrey Schonberg's ("Petitioners") Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Dominion Voting Systems, Inc. (the "Subpoena").

    5.    Based on my experience as Executive Vice President of Operations at Dominion, the following is true as to the requests in the Subpoena.

    6.    Subpoena Requests Nos. 1 and 7 ask for information that is either not in existence or not in a final form.

    7.    Subpoena Request No. 1 asks for: "A complete forensic image of one D-Suite EMS server, including all hard disk storage of all server and client computers and network-

attached storage devices, configured in the same way that Dominion configured the EMS server most recently used in, or if different currently in use in, Fulton County, Georgia." However, a complete forensic image of the "D-Suite EMS server" does not exist and nor does Dominion keep such a copy in the normal course of business. Dominion does not have access to Fulton County's or the State of Georgia's EMS servers. Rather, to comply with this request, Dominion would have to ask Fulton County and the State of Georgia for permission to access the EMS server, copy a new forensic image of this server that does not already exist, and produce the forensic image within approximately one week. Assuming Dominion could get authorization, which could take significant time, Dominion estimates it would take a product specialist approximately a week to travel, work with governmental authorities, create an image of the "D-Suite EMS Server," and produce it, and that it would cost approximately $5,000, plus opportunity costs.

8. Similarly, in Request No. 7, Petitioners seek "[a] copy of any software compatible with Dominion BMDs and scanners used in Georgia that does not use bar codes or QR codes for vote tabulation, together with any necessary documentation, installation tools, and passwords or security keys." Dominion is currently developing this software and therefore it has not been certified or implemented in any manner. It would be speculative at this point as to what software Dominion might eventually supply the State of Georgia. Moreover, all information concerning the software Dominion is currently developing is highly sensitive and proprietary intellectual property. Dominion intends to protect its trade secrets.

9. The Subpoena also includes requests that ask for in whole or in part numerous documents, communications, and intellectual property that are, sometimes exclusively, in the possession of the defendants in the underlying litigation in the Northern District of Georgia entitled *Curling v. Raffensperger*, No. 1:17-cv-2989-AT (N.D. Ga.) ("*Curling*"), or that may be obtained from public sources such as open records requests.

10. Subpoena Request No. 2 asks for "[d]ocumentation of procedures for pre-election and post-election equipment testing, including logic and accuracy testing, acceptance testing, and hash and/or digital signature verification, including procedures drafted or provided by the Office of the Secretary of State of Georgia." The Georgia Secretary of State is a defendant in *Curling*, and thus Dominion assumes he possesses the procedures drafted and provided by its office. Most, if not all, of the rest of the responsive documents are likely accessible as public records. To the extent Petitioners are seeking in Request No. 2 "documentation of procedures" for using Dominion's equipment and software drafted or revised by or sent to or from Dominion that are not available from these other sources, Dominion is willing to produce them if it is provided a reasonable time to collect them. Dominion estimates it will take approximately two weeks to identify, review, and produce any such documents.

11. Likewise, a significant number of the other requests in the Subpoena ask for documents and intellectual property that can be obtained from the *Curling* defendants or through other public records, which makes sense considering that states and counties, not Dominion, administer elections. Among others, they include:

    a. Copies of the installation media for the D-Suite EMS currently deployed in Georgia, which are requested in Request No. 4;

b. Copies of installation files or the software update installed in 2020 on ballot marking devices in Georgia, which are requested in Request No. 5;

c. Copies of software updates for Election System equipment made available in Georgia, which are requested in Request No. 6; and

d. Copies of procedures, mechanisms, practices, steps, and policies to protect the integrity and security of Election Projects in Georgia, which are requested in Request No. 14.

12. Separately, a number of requests in the Subpoena also ask for Dominion's highly sensitive and proprietary information and intellectual property. They include:

a. Request No. 1, which asks for highly sensitive and proprietary intellectual property;

b. Request No. 2, which may be asking for this type of information;

c. Request No. 3, which asks for copies of electronic information used to extract software or firmware on Election System equipment in Georgia. Dominion's electronic information used to extract software or firmware on Election System equipment is highly sensitive and proprietary information;

d. Request Nos. 4 through 6, all of which ask for existing highly sensitive and proprietary intellectual property;

e. Request No. 7, which asks for highly sensitive and proprietary intellectual property that is currently in development; and

f. Request No. 14, which asks for some materials that may be highly sensitive and proprietary intellectual property.

13. As for Request No. 11, which asks for Dominion's communications, including those with "Election Project programming contractors," reflecting whether its equipment used in Georgia has ever been connected to the internet or an external network, it should be noted that not only does Dominion not have any such contractors but that its equipment is not configured or certified to be connected to the internet or an external network.

14. Significantly, it would be incredibly burdensome to Dominion to collect copies of all the requested internal communications and communications between Dominion, the Georgia Secretary of State's office, and the various county offices, among others, as requested in Request Nos. 8 through 17. Through these requests, Petitioners are seeking communications on a wide variety of topics potentially regarding just about everything related to Dominion's voting systems used in Georgia and potentially around the country. The requests are so vague and ambiguous that Dominion does not understand the full scope of what Petitioners are requesting.

15. A large percentage of internal communications and communications with third-party outside counsel also likely would require a privilege review, and may be protected under

attorney-client privilege or the work product doctrine.  It would take weeks to identify the privileged individuals with whom Dominion communicated and several months to review the communications for privilege.

16. Further, these requests are vague and ambiguous to the extent they seek communications between Dominion and various "third parties."  It would take weeks to months to identify the hundreds, if not thousands, of relevant individuals with whom Dominion communicated and several more months to review the communications.  Dominion does not have the time or resources to respond to such burdensome requests concerning essentially every communication it has had for the past two years.

17. Dominion also estimates it would take at least a week to identify the more than sixty custodians relevant to each request, and an additional several months to review potentially relevant information and produce responsive documents.

18. While Dominion cannot give a more precise estimate of time and expense given that it had less than two weeks to respond to Respondent's Motion to Compel, in light of the challenges mentioned above, Dominion anticipates that it would take at least 5-6 weeks and cost over $45,000 plus attorneys' fees and lost opportunity costs to comply with the Subpoena.  Complying in any shorter amount of time would cause Dominion to severely curtail operations.

19. Dominion therefore is unable to provide documents in response to this Subpoena in accordance with the discovery deadline in the underlying *Curling* case, which Dominion understands is approximately one week from the date of this declaration.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of August, 2021.

_____
Nicole Nollette