[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14813
Non-Argument Calendar
_____

D.C. Docket No. 1:20-cv-05155-TCB

L. LIN WOOD,

                                                                      Plaintiff-Appellant,

versus

BRAD RAFFENSPERGER, et al.,

                                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 6, 2021)

Before MARTIN, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

      L. Lin Wood, Jr. appeals the district court's dismissal of his lawsuit against various Georgia state election officials. After careful consideration, we affirm the

district court's ruling because Wood is without Article III standing to make the claims he asserts in this action.

# I

The district court described this case as "the latest in a series of cases associated with Wood that seek to challenge aspects of the 2020 election cycle." On December 18, 2020, Wood, then a registered Georgia voter, sued Brad Raffensperger, Georgia's Secretary of State, along with members of the Georgia State Election Board in their official capacities ("Defendants"). Wood sought declaratory relief and an injunction "halting" Georgia's January 5, 2021, runoff election because he alleged the election was proceeding in a manner contrary to Georgia's election laws and the U.S. Constitution.

Wood alleged that Defendants authorized four unlawful procedures for use in the election: (1) the signature verification process for absentee ballots, (2) the processing of absentee ballots prior to election day, (3) the use of drop boxes for absentee ballots, and (4) the use of Dominion Voting Systems Corporation's voting machines. Based on these allegations, Wood brought three claims. First, he alleged the procedures violated his equal protection and voting rights, as he said he planned to vote in person in the election, and these procedures would dilute his vote and cause his vote to be treated differently. Second, Wood alleged the procedures violated his due process rights because the procedures were "defective

and unlawful" and affected the "integrity of the election." Last, he alleged the procedures violated the Guarantee Clause of the Constitution, which says the United States "shall guarantee to every State in this Union a Republican Form of Government." U.S. Const. Art. IV, § 4. In Wood's view, the procedures he identified violated the Guarantee Clause because they did "not provide for the certainty of a free and fair election."

The district court dismissed Wood's lawsuit for lack of jurisdiction, as the court found Wood did not have Article III standing to sue. With regard to the equal protection and due process claims, the district court found that Wood failed to demonstrate a particularized injury. The court noted other deficiencies for these claims as well. The district court then found that Wood lacked standing to bring his Guarantee Clause claim because the Guarantee Clause makes a guarantee of republican government only to the states and thus does not confer any rights on individuals. This is Wood's appeal.[1]

---

[1] Two issues arose while this appeal was pending. First, this Court directed the parties to address whether this appeal is moot, and thus whether we lack jurisdiction, "given that the January 5, 2021, election with respect to which Wood seeks relief has already occurred." In response, Wood says the appeal is not moot because the controversy is capable of repetition yet evading review and because he seeks nominal damages. Defendants argue that the appeal is moot because the election has "come and gone" and none of the exceptions to the mootness doctrine applies. Because we hold Wood lacked Article III standing to sue, we need not reach the question of whether the appeal is moot. See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431, 127 S. Ct. 1184, 1191 (2007) ("[T]here is no mandatory 'sequencing of jurisdictional issues.'").

Second, Defendants moved for leave to supplement the appellate record with material showing Wood did not actually vote in the election, which Defendants say "establishes beyond

## II

On appeal, Wood says the district court erred in dismissing his lawsuit for lack of Article III standing. We review de novo whether a plaintiff has Article III standing. See Wood v. Raffensperger, 981 F.3d 1307, 1313–16 (11th Cir. 2020). To show he has standing, a plaintiff must demonstrate he suffered an injury in fact that is fairly traceable to the defendant's actions and likely to be redressed by a favorable decision. Id. at 1314 (citing Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1245 (11th Cir. 2020)). An injury in fact is one that is concrete, particularized, and either actual or imminent. Id. (citing Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020)). The burden is on the plaintiff to demonstrate these requirements for each claim. See JW ex rel. Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1264 (11th Cir. 2018) (per curiam). Here, we look to the particularized-injury requirement. A particularized injury is one that "affects the plaintiff in a personal and individual way." Wood, 981 F.3d at 1314 (quoting Spokeo, Inc. v. Robins, 578 U.S. __, 136 S. Ct. 1540, 1548 (2016)) (quotation marks omitted and alteration adopted). That means the plaintiff

---

any doubt" that Wood lacked Article III standing and that the appeal is moot. Wood, in turn, moved to strike Defendants' motion to supplement the appellate record. Because we conclude Wood lacked standing without reference to any supplemental material, Defendants' motion to supplement the appellate record and Wood's motion to strike are **DENIED AS MOOT**.

must show more than a generalized grievance that is "undifferentiated and common to all members of the public." Id. at 1314 (quotation marks omitted).

In a recent case involving similar claims brought by Wood, our Court applied this framework to hold that Wood lacked standing to bring his claims. In that case, Wood alleged that Georgia's absentee-ballot and recount procedures used in the 2020 election violated his constitutional rights. Id. at 1310. He therefore sought to "enjoin certification of the general election results, to secure a new recount under different rules, and to establish new rules for an upcoming runoff election." Id. The Court noted that Wood's alleged "injury to the right 'to require that the government be administered according to the law'" was an insufficient generalized grievance. Id. at 1314 (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1205–06 (11th Cir. 1989)). And although Wood argued that "the inclusion of unlawfully processed absentee ballots diluted the weight of his vote" and that Georgia "valued" and "favored" in-person votes less than absentee votes, the Court held that neither injury was particularized and thus could not support standing. Id. at 1314–15 (alteration adopted). While the Court recognized vote dilution can be a particularized injury, Wood's claim of vote dilution was an insufficient generalized grievance because any vote dilution had a proportional effect on every vote and thus "no single voter [was] specifically disadvantaged." Id. at 1314–15 (quotation marks omitted). And Wood's assertion that Georgia

"valued" and "favored" in-person votes less than absentee votes was also only a generalized grievance because any harm did "not affect Wood as an individual—it [was] instead shared identically by the four million or so Georgians who voted in person this November." Id. at 1315 (alteration adopted).

Here, just like in his recent case, Wood lacked Article III standing to bring each of his three claims. Beginning with his equal protection claim, Wood argues he had standing because the challenged procedures diluted in-person votes and valued in-person votes less than absentee votes. However, Wood does not explain how his particular in-person vote, as opposed to all in-person votes more generally, was diluted or disvalued. With respect to his argument that the procedures diluted in-person votes, Wood fails to show the procedures "specifically disadvantaged" his vote rather than impacting the proportional effect of every vote. Id. at 1314–15 (quotation marks omitted). As for his argument that the procedures valued in-person votes less than absentee votes, Wood fails to show that harm "affect[ed] Wood as an individual." Id. at 1315. At most, Wood's asserted injuries were "shared identically by [all] Georgians who voted in person." Id. Wood therefore has shown nothing more than a textbook generalized grievance that is insufficient for Article III standing. See id. at 1314–15. And to the extent Wood argues in passing that he had standing because he believes the procedures were "unlawful," "illegal," and "unconstitutional," the injury to his right that the government be

6

administered according to the law is likewise an insufficient generalized grievance. See id. at 1314; see also, e.g., Lance v. Coffman, 549 U.S. 437, 439–42, 127 S. Ct. 1194, 1196–98 (2007) (per curiam) (collecting cases) (stating an allegation "that the law . . . has not been followed" is "precisely the kind of undifferentiated, generalized grievance" that is insufficient to support standing).

Turning to Wood's due process and Guarantee Clause claims, we note that he has failed to raise any arguments in support of his standing to bring those claims. Rather, all of his arguments in support of standing address his equal protection claim. Under our precedent, he has therefore abandoned his due process and Guarantee Clause claims on appeal. See Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1124 n.1 (11th Cir. 2019) (holding that plaintiffs abandoned a claim when they failed to challenge the district court's dismissal of the claim for lack of Article III standing).

But even if his claims were not abandoned, Wood lacked standing to bring them. For his due process claim, Wood alleged the procedures violated his due process rights because the procedures were "defective and unlawful" and affected the "integrity of the election." However, this grievance is common to all members of the public, so it is not particularized and thus not enough for Article III standing. See Wood, 981 F.3d at 1314; see also Dillard v. Chilton Cnty. Comm'n, 495 F.3d 1324, 1333 (11th Cir. 2007) (per curiam) (noting that "an asserted interest in being

free of an allegedly illegal electoral system" is not a particularized injury). Wood's Guarantee Clause claim fails for the same reason. He alleged the procedures violated the Guarantee Clause because they did "not provide for the certainty of a free and fair election." This grievance is also common to all members of the public and therefore insufficient for Article III standing. See Wood, 981 F.3d at 1314; see also Democratic Party of Wis. v. Vos, 966 F.3d 581, 589 (7th Cir. 2020) (observing that "the Guarantee Clause makes the guarantee of a republican form of government to the states; the bare language of the Clause does not directly confer any rights on individuals [vis-à-vis] the states" (quoting Largess v. Supreme Jud. Ct. for the State of Mass., 373 F.3d 219, 224 n.5 (1st Cir. 2004) (per curiam) (quotation marks omitted)).

**AFFIRMED.**